# IN THE SUPREME COURT OF CALIFORNIA

REBECCA MEGAN QUIGLEY,
Plaintiff and Appellant,

v.

GARDEN VALLEY FIRE PROTECTION DISTRICT et al.,
Defendants and Respondents.

S242250

Third Appellate District
C079270

Plumas County Superior Court
CV1000225

July 15, 2019

Justice Kruger authored the opinion of the Court, in which Chief Justice Cantil-Sakauye and Justices Chin, Corrigan, Liu, Cuéllar, and Groban concurred.

QUIGLEY v. GARDEN VALLEY FIRE PROTECTION
DISTRICT
S242250


Opinion of the Court by Kruger, J.


The Government Claims Act (Gov. Code, § 810 et seq.) authorizes plaintiffs to bring certain tort claims against public entities, while also immunizing public entities from liability in particular circumstances.  One of the act's immunity provisions bars any statutory liability that might otherwise exist for injuries resulting from the condition of firefighting equipment or facilities.  (*Id.*, § 850.4.)  The question presented is whether this immunity provision constitutes an affirmative defense that may be forfeited if not timely raised or instead serves as a limitation on the fundamental jurisdiction of the courts, such that the issue can never be forfeited or waived.  We conclude that Government Code section 850.4 immunity does not deprive a court of fundamental jurisdiction but rather operates as an affirmative defense to liability.

## I.

### A.

Enacted in 1963, the Government Claims Act (GCA or Act) is a comprehensive statutory scheme governing the liabilities and immunities of public entities and public employees for torts.  (*Kiser v. County of San Mateo* (1991) 53 Cal.3d 139, 145.)  For many decades before the Act, tort liability for public entity defendants was barred by a common law rule of governmental immunity.  Over time, however, the common law rule became

1

"riddled with exceptions," both legislative and judge-made, and in 1961 this court abolished the rule altogether. (*Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211, 216 (*Muskopf*).) In response to *Muskopf*, the Legislature temporarily suspended the decision's effect (Stats. 1961, ch. 1404, pp. 3209–3210) and directed the California Law Revision Commission to complete a study of the issue it had begun some years earlier (see Assem. Conc. Res. No. 22, Stats. 1957 (1956-1957 Reg. Sess.) res. ch. 202, p. 4590; Cal. Government Tort Liability Practice (Cont.Ed.Bar 4th ed. 1999) Legislative Response: Government Claims Act, § 1.40; DeMoully, *Fact Finding for Legislation: A Case Study* (1964) 50 A.B.A. J. 285). The end product of the commission's study was a series of recommendations (see, e.g., Recommendation Relating to Sovereign Immunity, No. 1—Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 801), on which the Legislature relied in enacting the GCA (see DeMoully, at p. 286).[1]

The basic architecture of the Act is encapsulated in Government Code section 815. Subdivision (a) of that section makes clear that under the GCA, there is no such thing as common law tort liability for public entities; a public entity is not liable for an injury "[e]xcept as otherwise provided by statute." (Gov. Code, § 815; see *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897.) The GCA provides several grounds

---

[1]    When first enacted, the statute was known as the Tort Claims Act; the Legislature later retitled it the Government Claims Act. (Stats. 2012, ch. 759, § 5; see also Recommendation: Statutory Cross-References to "Tort Claims Act" (June 2011) 41 Cal. Law Revision Com. Rep. (2011) p. 285; *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 740–742.)

for public entity liability, including, as relevant here, for injuries caused "by a dangerous condition of [a public entity's] property" that was created through an employee's negligence. (Gov. Code, § 835, subd. (a).)

But even when there are statutory grounds for imposing liability, subdivision (b) of section 815 provides that a public entity's liability is "subject to any immunity of the public entity provided by statute." (Gov. Code, § 815, subd. (b).) Government Code section 850.4 (section 850.4), the provision at issue in this case, establishes one such immunity: "Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities or," with the exception of certain motor vehicle accidents, "for any injury caused in fighting fires." Section 850.4 was enacted at the recommendation of the Law Revision Commission. The commission's report to the Legislature explained section 850.4's purpose as follows: "There are adequate incentives to careful maintenance of fire equipment without imposing tort liability; and firemen should not be deterred from any action they may desire to take in combatting fires by a fear that liability might be imposed if a jury believes such action to be unreasonable." (4 Cal. Law Revision Com. Rep., *supra*, at p. 862; see *Heieck and Moran v. City of Modesto* (1966) 64 Cal.2d 229, 233, fn. 3 (*Heieck and Moran*).)[2]

---

[2] The Assembly and Senate Committee reports largely adopted the commission's commentary, noting that the commission's comments generally "reflect the intent" of the committees in approving the provisions. (Assem. Com. on Ways

## B.

In September 2009, a wildfire known as the Silver Fire broke out in the Plumas National Forest. Employees of two local fire protection districts managed a base camp set up at a local fairground for the firefighting response. The base camp management team allowed firefighters resting in between firefighting shifts to sleep in tents and sleeping bags near a portable shower unit. Plaintiff Rebecca Megan Quigley, a United States Forest Service firefighter, was sleeping in this area when she was run over by a water truck servicing the shower unit. She sustained serious and permanent injuries.

Quigley sued three base camp managers—the facility unit leader, logistics chief, and camp safety officer—as well as their employers, the Chester Fire Protection District and the Garden Valley Fire Protection District.[3] She alleged that defendants were negligent in permitting firefighters to sleep in the area where she was run over, without roping the area off or posting signs forbidding vehicles from entering. She claimed defendants had thereby created a "dangerous condition" of public property, for which public entities may be held liable under section 835 of the Government Code.

In their answer, defendants alleged 38 affirmative defenses, including 11 defenses asserting immunity under 17

_____

& Means, Rep. on Sen. Bill No. 42 (1963 Reg. Sess.) 3 Assem. J. (1963 Reg. Sess.) p. 5440; Sen. Com. on Judiciary, Rep. on Sen. Bill No. 42 (1963 Reg. Sess.) 2 Sen. J. (1963 Reg. Sess.) p. 1885.)

[3] Although defendants initially contended that the three base camp managers were federal employees, they later stipulated that these individuals were employees of the local fire protection districts.

individually cited sections of the GCA. These individually cited defenses ranged from property inspection immunity (Gov. Code, § 818.6) to discretionary act immunity (*id.*, § 820.2). Defendants did not allege the immunity conferred by section 850.4. They did, however, raise a fifteenth affirmative defense that cited inclusively to all immunities under the GCA: "A public entity and its employees are immune from liability for damages alleged in the complaint and Defendants assert all defenses and rights granted to them by the provisions of Government Code sections 810 through 996.6, inclusive."

Trial began more than four years after the complaint was filed. After Quigley's counsel completed his opening statement, defense counsel presented a written motion for nonsuit, in which defendants for the first time invoked section 850.4. Quigley objected on the ground that defendants had waived any argument they might have under section 850.4 by failing to invoke the immunity in their answer. (See Code Civ. Proc., § 430.80, subd. (a).)[4]

---

[4] The parties' use of the term "waiver" tracks the language of section 430.80, subdivision (a) of the Code of Civil Procedure: "If the party against whom a complaint or cross-complaint has been filed fails to object to the pleading, either by demurrer or answer, that party is deemed to have waived the objection," subject to certain exceptions. The statute's use of the term "waiver" differs from the way we generally use this term: "As we have explained in various contexts, ' "waiver" means the intentional relinquishment or abandonment of a known right.' . . . [¶] . . . [Waiver] differs from the related concept of forfeiture, which results when a party fails to preserve a claim by raising a timely objection." (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 475–476.) Nonetheless, because the relevant statute uses the term "waiver," we use it here as well.

The trial court overruled Quigley's objection, reasoning that defendants could not have waived section 850.4 immunity because "governmental immunity is jurisdictional and can't be waived." On the merits, the trial court agreed with defendants that Quigley's cause of action sought recovery for injuries caused by a condition of firefighting facilities—namely, the base camp—and was thus barred by section 850.4 immunity.

Quigley later renewed her objection in a motion for a new trial, which the court denied. In ruling on that motion, the court offered a different rationale for entertaining defendants' late-raised section 850.4 argument. It held that defendants did not waive section 850.4 immunity because defendants' "general allegation [in the fifteenth affirmative defense] that [they] were immune from liability as public entities and public employees is sufficient to assert governmental immunity under section 850.4."

On appeal, Quigley again renewed her objection to defendants' belated invocation of section 850.4 immunity. The Court of Appeal rejected the argument. Without addressing whether defendants' omnibus pleading of the entire GCA was adequate to preserve defendants' section 850.4 argument, the Court of Appeal agreed with the trial court that defendants could not have waived the issue because section 850.4 is "jurisdictional" and therefore may be raised "at any time." Proceeding to the merits, the Court of Appeal also agreed with the trial court that section 850.4 immunity applies to injuries

resulting from the condition of a firefighting base camp, and thus affirmed the award of nonsuit to defendants.[5]

The Court of Appeal recognized that its jurisdictional ruling created a conflict with *McMahan's of Santa Monica v. City of Santa Monica* (1983) 146 Cal.App.3d 683.  In *McMahan's*, a corroded city water main broke, spewing water that damaged the plaintiff's store.  The city argued for the first time on appeal that it was immune from the plaintiff's damages claim under section 850.4, because the water pipe was "fire protection equipment."  The appellate court declined to consider the argument, taking the view that section 850.4 provides an affirmative defense that the city waived by failing to plead and prove it before the trial court.

The Court of Appeal criticized *McMahan's* for failing to distinguish between those sections of the GCA that provide "qualified" immunity and those that provide "absolute" immunity.  The Court of Appeal reasoned that the first kind of immunity provision creates an affirmative defense because the public entity must make some sort of affirmative showing to establish the immunity applies. The court pointed to *De La Rosa v. City of San Bernardino* (1971) 16 Cal.App.3d 739, on which *McMahan's* had relied, as one example of a qualified immunity in action.  *De La Rosa* did not concern immunity under section 850.4, but instead concerned design immunity under Government Code section 830.6; to invoke that immunity, a

---

[5]     Whether the Court of Appeal was correct to hold that Quigley's alleged injuries "result[ed] from the condition of fire protection or firefighting equipment or facilities" within the meaning of section 850.4 is a question that falls outside of the scope of our grant of review, and we do not address it here.

public entity must show that it has maintained public property in conformity with an approved plan or design.

The Court of Appeal observed that section 850.4 imposes no similar requirement. The court instead likened section 850.4 to the governmental immunity at issue in *Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791 (*Hata*), which concerned the immunity of public entities for injuries to inpatients of mental institutions (Gov. Code, § 854.8, subd. (a)(2)). In *Hata*, the Court of Appeal reversed the trial court's ruling that the county defendant waived this immunity by failing to raise it before trial. Among the many reasons the court gave for this conclusion, the *Hata* court explained that because the inpatient immunity statute contains "no requirement the public entity make any type of affirmative showing" (*Hata*, at p. 1804), the immunity it provides is "absolute" (*id.* at p. 1803), and therefore is "jurisdictional and may be raised at any time" (*id.* at p. 1804). Agreeing with *Hata* on this point, the Court of Appeal in this case concluded that because section 850.4 requires no affirmative showing on the part of defendants, it could be raised at any time and was not waived.

We granted review to resolve the conflict between the Court of Appeal's decision and *McMahan's* about whether the governmental immunity set forth in section 850.4 is jurisdictional or instead may be forfeited if not timely raised.

## II.

## A.

We begin with a necessary note about terminology. As we have long recognized, the term "jurisdiction" has "many different meanings." (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 287 (*Abelleira*).) Here we are concerned with jurisdiction in what we typically refer to as its "fundamental sense": specifically, the power of the court over the subject matter of the case. (*Id.* at p. 288; see *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 196.) A lack of fundamental jurisdiction is the " ' " 'entire absence of power to hear or determine the case.' " ' " (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339 (*Kabran*).) Because it concerns the basic power of a court to act, the parties to a case cannot confer fundamental jurisdiction upon a court by waiver, estoppel, consent, or forfeiture. (*Ibid.*) Defects in fundamental jurisdiction therefore "may be raised at any point in a proceeding, including for the first time on appeal," or, for that matter, in the context of a collateral attack on a final judgment. (*People v. Chavez* (2018) 4 Cal.5th 771, 780.) By contrast, other sorts of objections a defendant might have on the merits—including an objection that liability is barred by an affirmative defense—are ordinarily deemed "waived" if the defendant does not raise them in its demurrer or answer to the complaint. (Code Civ. Proc., § 430.80, subd. (a).)

Quigley argues that the statutory immunities under the GCA do not deprive a court of fundamental jurisdiction to hear a tort case against a government entity, but instead operate as affirmative defenses that must be pleaded and proved or are deemed waived. Defendants, for their part, urge that section

850.4 deprives a court of subject matter jurisdiction where it applies, such that it may be raised at any time—indeed, even after judgment has become final.

In evaluating these competing claims, we begin with the usual presumption that statutes do not limit the courts' fundamental jurisdiction absent a clear indication of legislative intent to do so. (E.g., *Kabran*, *supra*, 2 Cal.5th at pp. 342–343.) California's superior courts are courts of general jurisdiction, which means they are generally empowered to resolve the legal disputes that are brought to them. (Cal. Const., art. VI, §§ 1, 10; see generally 20 Am.Jur.2d (2015) Courts, § 66, p. 464 ["Courts of general jurisdiction have the power to hear and determine all matters, legal and equitable, except insofar as these powers have been expressly denied."].) Although the Legislature may impose reasonable restrictions on the fundamental jurisdiction of the courts, our cases reflect "a preference for the resolution of litigation and the underlying conflicts on their merits by the judiciary." (*Kabran*, at pp. 342–343.) The power of the courts to resolve cases is the essential underpinning of the judiciary's ability to " 'effectively . . . function as a separate department of government.' " (*Id.* at p. 343.) " 'Consequently an intent to defeat the exercise of the court's jurisdiction will not be supplied by implication.' " (*Ibid.*) If the Legislature means to withdraw a class of cases from state court jurisdiction, we expect it will make that intention clear. (See, e.g., *International Assn. of Fire Fighters, Local 188, AFL-CIO v. Public Employment Relations Bd.* (2011) 51 Cal.4th 259, 270 ["This court will not infer a legislative intent to entirely deprive the superior courts of judicial authority in a particular area; the Legislature must have expressly so provided or otherwise clearly indicated such an intent."].)

On its face, section 850.4 contains no clear indication of a legislative intent to limit the fundamental jurisdiction of the courts.  Section 850.4 provides, as relevant here:  "Neither a public entity, nor a public employee acting in the scope of his employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities[.]"  Nothing in the language of this provision suggests it was intended to withdraw a class of cases from the courts' power to adjudicate.  Unlike some other provisions that have been understood to have such an effect, section 850.4 makes no reference to the jurisdiction of the courts, nor does it otherwise speak to the courts' power to decide a particular category of cases.  (Cf., e.g., Pub. Util. Code, § 1759, subd. (a) ["No court of this state, except the Supreme Court and the court of appeal, to the extent specified in this article, shall have jurisdiction to review, reverse, correct, or annul any order or decision of the [Public Utilities Commission][.]"], discussed in *San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 916; Bus. & Prof. Code, § 6100 ["For any of the causes provided in this article, arising after an attorney's admission to practice, he or she may be disbarred or suspended by the Supreme Court."], discussed in *Jacobs v. State Bar* (1977) 20 Cal.3d 191, 196.)

Section 850.4 instead reads as a substantive bar to tort liability, much like other privileges or immunities provisions that shield particular actors or activities from otherwise applicable liability for tortious conduct.  Quigley sued under Government Code section 835, which makes public entities liable for injuries arising from a dangerous condition of public property.  Section 850.4 provides a justification or excuse from liability that would otherwise exist under section 835, based on considerations of policy.  (See *Heieck and Moran, supra,* 64

Cal.2d at p. 233, fn. 3.)  As a general rule, such matters must "be pleaded and proved by one who seeks thereby to destroy the seemingly tortious character of his conduct, and so protect himself from being subject to liability."  (Rest.2d Torts, § 10, com. c, pp. 17–18.)

Consistent with this understanding, we have previously described other GCA statutory immunities as affirmative defenses to liability.  Government Code section 830.6, for example, immunizes public entities for injuries caused by a properly approved plan or design of public property.  We have explained that this design immunity is a "defense" that a public entity should "raise[] . . . by appropriate pleadings."  (*Teall v. City of Cudahy* (1963) 60 Cal.2d 431, 435; see also *Cornette v. Department of Transportation* (2001) 26 Cal.4th 63, 66 ["[A] public entity may avoid [section 835] liability by raising the affirmative defense of design immunity."  (Italics omitted.)].)  Similarly, Government Code section 835.4 absolves a public entity of liability for a dangerous condition under Government Code section 835 where the act or omission that created the condition was "reasonable."  We have held that this immunity, too, "clearly creates an affirmative defense." (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1138; see also *Hibbs v. Los Angeles County Flood Control Dist.* (1967) 252 Cal.App.2d 166, 172.)

It is true, as the Court of Appeal observed, that section 850.4 differs from these other immunity provisions in that it creates an "absolute," rather than "qualified," immunity—that is to say, the immunity is not conditioned on a showing that the defendant acted in a reasonable or procedurally proper manner, or any similar requirement.  But absolute privileges and immunities, too, ordinarily apply only if the defendant invokes

them. Courts have held, for example, that the absolute litigation privilege in Civil Code section 47, subdivision (b)—a provision that operates "as a limitation on liability, precluding use of . . . protected communications and statements as the basis for a tort action other than for malicious prosecution" (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638, fn. 1, italics omitted)—is an affirmative defense subject to principles of forfeiture and waiver (*Stevens v. Snow* (1923) 191 Cal. 58, 64; see also, e.g., *Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 367). Or to take another example, the common law has long granted judges absolute immunity from liability for their judicial acts. (*Soliz v. Williams* (1999) 74 Cal.App.4th 577, 585–586; see also, e.g., *Pierson v. Ray* (1967) 386 U.S. 547, 554 [similarly describing the common law immunity].) This immunity, too, generally has been understood to constitute an affirmative defense, not a limitation on court jurisdiction. (E.g., *Boyd v. Carroll* (5th Cir. 1980) 624 F.2d 730, 732–733; *Plyer v. Burns* (S.C. 2007) 647 S.E.2d 188, 194–195; *Dallas County v. Halsey* (Tex. 2002) 87 S.W.3d 552, 553; *BCL Enterprises v. Dept. of Liquor Control* (Ohio 1997) 675 N.E.2d 1, 4.)[6]

---

[6] Even were it otherwise—that is, even if it were the plaintiff's burden to plead around an absolute immunity, rather than the defendant's burden to invoke the immunity as an affirmative defense—that would not necessarily mean the immunity is jurisdictional in nature, as the Court of Appeal in this case reasoned. The GCA's provision requiring plaintiffs to have timely filed a claim for money or damages with a public entity as a prerequisite to bringing suit (Gov. Code, § 945.4) is a case in point: In *State of California v. Superior Court* (*Bodde*) (2004) 32 Cal.4th 1234, 1239, we held that a plaintiff's "failure to allege facts demonstrating or excusing compliance with the

Notwithstanding section 850.4's resemblance to other affirmative defenses, defendants argue that the GCA's roots in the doctrine of sovereign immunity support affixing the jurisdictional label instead. As noted, the GCA was enacted after this court abolished the common law rule of governmental immunity in *Muskopf, supra*, 55 Cal.2d 211. Defendants reason that because the Legislature enacted the GCA to restore governmental immunity from liability as "the overarching rule," subject only to those exceptions created by statute, courts must lack power to hear a tort claim against a public entity where an immunity provision like section 850.4 applies.

Defendants' argument assumes that the Legislature's evident intent to limit the tort liability of public entities in the GCA (even when there is an applicable statutory basis for liability, as Government Code section 835 provides here) means the Legislature must also have intended to withdraw a class of tort cases from the fundamental jurisdiction of the courts. This assumption is unfounded, for reasons *Muskopf* itself made clear: California law has long distinguished between limitations on the substantive liability of public entities, on the one hand, and limitations on the power of the courts to hear cases involving public entities, on the other. (See *Muskopf, supra*, 55 Cal.2d at pp. 217–218.)

Granted, for some time in our history, the distinction between these two kinds of limitations had little practical

_____

[GCA's] claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action." But even so, we explicitly rejected the notion that a plaintiff's failure to allege compliance "divests the court of jurisdiction over a cause of action against a public entity." (*Id.* at p. 1239, fn. 7.)

relevance. At common law, the doctrine of sovereign immunity had two strands: a procedural immunity from suit without the government's consent and a substantive immunity from liability for the conduct of government. (*State Dept. of State Hospitals v. Superior Court* (2015) 61 Cal.4th 339, 347.) Combined, the effect of these two features was to close California courts to individuals injured by the negligence of public entities and employees. (See *Welsbach Co. v. State of California* (1929) 206 Cal. 556, 558.) For individuals injured by state employees, for example, the only possible remedy was payment via a private appropriation bill enacted by the Legislature. (*Ibid*.; see generally Van Alstyne, *Governmental Tort Liability: Judicial Lawmaking in a Statutory Milieu* (1963) 15 Stan. L.Rev. 163, 168–169.)

But as *Muskopf* explained, various legal developments would disentangle the two strands of sovereign immunity doctrine in California. (See *Muskopf*, *supra*, 55 Cal.2d at pp. 217–218.) In 1885, the Legislature passed an act permitting certain named individuals to "institute an action against the State of California in any Court of competent jurisdiction" for property damages that the individuals sustained from the state's construction of a new canal. (Stats. 1885, ch. 123, § 1, p. 107, discussed in *Green v. State* (1887) 73 Cal. 29 (*Green*).) The Legislature followed this narrow authorization to file suit with a broader one, authorizing "[a]ll persons who have, or shall hereafter have, claims on contract or for negligence against the State not allowed by the State Board of Examiners . . . to bring suit thereon against the State in any of the Courts of this State of competent jurisdiction[.]" (Stats. 1893, ch. 45, § 1, p. 57, discussed in *Denning v. State* (1899) 123 Cal. 316 (*Denning*).)

In subsequent cases interpreting these statutes, this court held that the statutes eliminated the state's procedural immunity to suit, thus opening the courts to the adjudication of the specified claims. (*Green, supra,* 73 Cal. at pp. 32–33; *Denning, supra,* 123 Cal. at p. 319.) But we rejected the idea that the Legislature, by offering the state's consent to suit, also intended to eliminate the state's substantive immunity from liability. (*Green,* at p. 33; *Denning,* at p. 319; see also *Melvin v. State* (1898) 121 Cal. 16, 22–23; *Chapman v. State* (1894) 104 Cal. 690, 693–694.) Instead, we held, the state could rely on the common law principles that states are immune from liability for damages caused by the negligence or misfeasance of their employees (*Denning,* at p. 324) and that states are not liable for remote and consequential damages to property stemming from public works (*Green,* at pp. 34–39).

By the time of *Muskopf,* similar provisions granting legislative consent to suit were not uncommon. As *Muskopf* noted, the California Constitution itself contemplates the granting of such consent in suits against the state (Cal. Const., art. III, § 5, former art. XX, § 6), and the Legislature had enacted a " 'sue and be sued' " statute applicable to hospital districts, the subject of the particular controversy in *Muskopf.* (*Muskopf, supra,* 55 Cal.2d at p. 217, citing Health & Saf. Code, § 32121, subd. (b).) But *Muskopf* acknowledged that such provisions did not displace common law limitations on the substantive liability of the relevant public entities. The court explained that "[p]revious cases . . . have differentiated between the state's consenting to be sued and its substantive liability, and have held that the language used in [Health and Safety Code] section 32121, subdivision (b), and in article [III], section [5], gives only

the state's consent to be sued and does not waive any defenses or immunities." (*Muskopf*, at p. 217.)

The *Muskopf* court therefore held that, notwithstanding an applicable grant of legislative consent to bring suit against a public entity, it was a separate question whether the common law barred courts from imposing substantive liability. Ultimately it answered the latter question in the negative, discarding the common law rule of "governmental immunity from tort liability" as "mistaken and unjust" insofar as it operated to deny compensation to individuals harmed by a public entity's wrongs. (*Muskopf*, *supra*, 55 Cal.2d at p. 213; see *id.* at pp. 216–217.)

When the California Law Revision Commission made its recommendations about legislative responses to *Muskopf*, it likewise focused primarily on questions of substantive public entity liability, and it dealt separately with questions concerning the amenability of public entities to suits in state courts. The commission proposed what ultimately became Government Code section 945, which provides simply: "A public entity may sue and be sued." The commission's comment on the proposed section explains: "Section 945 is new. This section will eliminate any doubt that might otherwise exist as to whether a tort action might be defeated on the technical ground that a particular local public entity is not subject to suit. The section does not, however, impose substantive liability; some other statute must be found that imposes such liability." (Recommendation Relating to Sovereign Immunity, No. 2— Claims, Actions and Judgments Against Public Entities and Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 1042.)

In sum, the history indicates that the GCA's liability and special immunity provisions, like section 850.4, were addressed to questions of substantive liability. As for the separate question whether public entities are amenable to suit in state courts, it appears the Legislature sought to put any doubts to rest when it broadly waived common law immunity from suit for all public entities in Government Code section 945.

Given this background, there is little basis for defendants' assumption that the Legislature intended the immunity conferred by section 850.4 to function as a partial withdrawal of the state's consent to suit when a plaintiff brings a claim under a liability-providing section of the Act. In the absence of clearer indication that such was the Legislature's intent, we presume the opposite: that is, that the Legislature did not intend to limit the fundamental power of the courts to hear the legal disputes that are brought to them. (*Kabran*, *supra*, 2 Cal.5th at pp. 342–343.)[7]

## B.

In arguing that section 850.4 creates a jurisdictional bar, defendants rely heavily on a series of cases that generally describe governmental tort immunity as "jurisdictional." These cases, however, appear to conflate lack of fundamental jurisdiction with acts *in excess of* jurisdiction. " 'Even when a court has fundamental jurisdiction . . . the Constitution, a

---

[7] The parties present competing arguments about the nature of sovereign, or governmental, immunity based on semi-analogous law from other jurisdictions. We are not bound by any of these approaches in interpreting our own law, and the unique features and history of the GCA and the state's sovereign immunity in our courts temper the conclusions we may draw from these arguments.

statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations.' [Citation.] We have described courts that violate procedural requirements, order relief that is unauthorized by statute or common law, or otherwise ' "fail[] to conduct [themselves] in the manner prescribed" ' by law as acting ' "in *excess* of jurisdiction." ' " (*Kabran, supra,* 2 Cal.5th at pp. 339–340.) Attending to this "distinction is important because the remedies are different." (*People v. Lara* (2010) 48 Cal.4th 216, 225.) Again, when a court lacks fundamental jurisdiction, it has no power to hear or determine the case, and the parties cannot cure that fundamental absence of power. But so long as a court possesses fundamental jurisdiction, an act that it takes in excess of jurisdiction is " 'valid until set aside, and parties may be precluded from setting it aside by such things as waiver, estoppel, or the passage of time.' " (*Kabran,* at p. 340.)

The cases on which defendants rely do not acknowledge this distinction or explain why the application of a statutory immunity ought to rank as jurisdictional in the fundamental sense. Each case simply cites the last for the proposition that governmental immunity is jurisdictional and thus cannot be waived and may be raised for the first time on appeal. (*Paterson v. City of Los Angeles* (2009) 174 Cal.App.4th 1393, 1404, fn. 5 ["Appellants contend that this defense was waived because it was not sufficiently asserted in the answer. Governmental immunity is a jurisdictional question [citation], and thus is not subject to the rule that failure to raise a defense by demurrer or answer waives that defense."]; *Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE)* (2007) 157 Cal.App.4th 1056, 1061 ["Government tort immunity is jurisdictional and may be raised for the first time on appeal."]; *Inland Empire*

*Health Plan v. Superior Court* (2003) 108 Cal.App.4th 588, 592 ["[G]overnmental immunity from liability is a jurisdictional matter that can be raised for the first time on appellate review."]; *Hata, supra,* 31 Cal.App.4th at p. 1795 ["[G]overnmental tort immunity . . . is a jurisdictional issue that may be raised at any time, even for the first time on appeal."]; *Hooper v. City of Chula Vista* (1989) 212 Cal.App.3d 442, 454, fn. 11 [reasoning that a GCA immunity raises "a jurisdictional question subject to judicial determination" that "may be reached on appeal even if not adequately asserted in the trial court"]; *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1435 ["[G]overnmental immunity is a jurisdictional question and may be raised on appeal even though not used as a basis for the general demurrer in the lower court."]; *Buford v. State of California* (1980) 104 Cal.App.3d 811, 826 ["[T]wo defects of substance—lack of jurisdiction and failure to state a cause of action—are not waived by a failure to demur and may be raised for the first time on appeal. [Citations.] Since governmental immunity is jurisdictional [citation] and can properly preclude a cause of action, we can appropriately address the applicability of section 854.8."].)

The apparent root of this doctrinal branch is *State of California v. Superior Court* (*Rodenhuis*) (1968) 263 Cal.App.2d 396, a case decided soon after the enactment of the GCA. There, the court considered a petition for a writ of prohibition filed by the State of California, which sought to restrain the superior court from proceeding to trial on a claim seeking damages for personal injuries sustained on a state beach. The state argued that it was immune from liability because the plaintiff's evidence could not establish the requisite elements of a dangerous condition of public property claim under Government

Code section 835. Before considering the merits of the state's argument, the Court of Appeal first addressed the plaintiff's preliminary contention that prohibition was inappropriate to address this issue and that the state should instead be required to raise the issue on appeal. (*Rodenhuis*, at p. 398.) In rejecting this argument, the *Rodenhuis* court reasoned that "[i]t is well established that the defense of sovereign immunity presents a jurisdictional question properly raised by prohibition." (*Ibid.*) For that proposition, it relied on this court's decision in *People v. Superior Court* (*Pierpont*) (1947) 29 Cal.2d 754, a case preceding both *Muskopf* and the GCA, in which we held that the defense of common law sovereign immunity "presents a jurisdictional question" properly addressed by prohibition. (*Pierpont*, at p. 756; *Rodenhuis*, at p. 398.)

Whatever the merits of *Rodenhuis*'s reasoning, its conclusion did not amount to a holding that sovereign immunity deprives a court of *fundamental* jurisdiction, because prohibition is proper to address judicial action taken either without jurisdiction or in excess of jurisdiction. (Code Civ. Proc., § 1102; *Abelleira, supra,* 17 Cal.2d at pp. 287–291 [explaining that prohibition lies to restrain judicial acts taken in excess of jurisdiction and without jurisdiction, but not to correct mere errors of law].) In deciding that the state could raise its defense of sovereign immunity by application for writ of prohibition, the *Rodenhuis* court had no need or occasion to determine whether governmental immunity divests a court of fundamental jurisdiction.

The Courts of Appeal that have held that statutory immunities in the GCA are jurisdictional in the fundamental sense have done so only by removing *Rodenhuis*'s statement about the jurisdictional nature of governmental immunity from

21

its proper context. *Rodenhuis* did not hold that GCA immunities are jurisdictional in the fundamental sense, such that they cannot be waived or forfeited, and for the reasons given above, we reject that conclusion.[8]

## III.

Having determined that section 850.4 immunity operates as an affirmative defense and not a jurisdictional bar, the question remains whether defendants in this case adequately invoked the immunity in their answer and, if they did not, whether the defense should be deemed waived or forfeited.

Defendants maintain that they raised the immunity in their answer, when, in their fifteenth affirmative defense, they claimed to "assert all defenses and rights granted to them by the provisions of Government Code sections 810 through 996.6, inclusive." They suggest that this citation to the entire GCA was sufficient to raise section 850.4 as an affirmative defense and put Quigley on notice that they intended to rely on it. In denying Quigley's motion for a new trial, the trial court accepted this argument, ruling that defendants' "general allegation that [they] were immune from liability as public entities and public employees" in their answer was sufficient to assert section

---

[8] We disapprove of *Paterson v. City of Los Angeles, supra,* 174 Cal.App.4th 1393, *Richardson-Tunnell v. Schools Ins. Program for Employees (SIPE), supra,* 157 Cal.App.4th 1056, *Inland Empire Health Plan v. Superior Court, supra,* 108 Cal.App.4th 588, *Hata v. Los Angeles County Harbor/UCLA Medical Center, supra,* 31 Cal.App.4th 1791, *Hooper v. City of Chula Vista, supra,* 212 Cal.App.3d 442, *Kemmerer v. County of Fresno, supra,* 200 Cal.App.3d 1426, and *Buford v. State of California, supra,* 104 Cal.App.3d 811, to the extent they suggest that statutory immunities in the GCA deprive courts of fundamental jurisdiction.

850.4. Quigley counters that "[t]he primary function of a pleading is to give the other party notice so that it may prepare its case" (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 240), and she argues that defendants' whole-act pleading provided insufficient notice that defendants intended to rely on the affirmative defense provided by section 850.4, given the 50-plus immunity provisions contained in the Act.

The Court of Appeal has yet to consider these arguments, as it upheld the trial court's decision to entertain defendants' assertion of section 850.4 immunity solely on the basis that the immunity is jurisdictional and may be raised at any time. Having rejected that conclusion, we will remand the case so the Court of Appeal may address the parties' remaining arguments in the first instance. Specifically, assuming the issue is adequately preserved, the court must determine whether defendants' whole-act pleading in the fifteenth affirmative defense sufficiently raised the defense provided by section 850.4, in light of the requirements of Code of Civil Procedure section 431.30, subdivision (g) and the general notice purposes of our pleading rules. If the Court of Appeal determines that section 850.4 immunity was not adequately raised in defendants' answer, the case should be remanded to permit the trial court to decide whether to exercise its discretion to allow the belated assertion of the defense after the commencement of the trial. (See *Moss Estate Co. v. Adler* (1953) 41 Cal.2d 581, 585 ["[W]hether the filing of an amended pleading should be allowed at the time of trial is ordinarily committed to the sound discretion of the trial court."].)

## IV.

We reverse the judgment of the Court of Appeal and remand for further proceedings not inconsistent with this opinion.

**KRUGER, J.**

**We Concur:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**GROBAN, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Quigley v. Garden Valley Fire Protection District
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 10 Cal.App.5th 1135
**Rehearing Granted**

_____

**Opinion No.** S242250
**Date Filed:** July 15, 2019
_____

**Court:** Superior
**County:** Plumas
**Judge:** Janet Hilde

_____

**Counsel:**

Jay-Allen Eisen Law Corporation, Downey Brand, Jay-Allen Eisen; Law Offices of Reiner & Slaughter, Reiner, Slaughter, McCartney & Frankel, Russell Reiner, Todd E. Slaughter and April K. Gesberg for Plaintiff and Appellant.

Alan Charles Dell'Ario for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Joseph A. Salazar, Jr., Jeffry A. Miller, Lann G. McIntyre and Jonna D. Lothyan for Defendants and Respondents.

Pollak, Vida & Barer and Daniel P. Barer for League of California Cities, California State Association of Counties, California Association of Joint Powers Authorities, California Special Districts Association and International Municipal Lawyers Association as Amici Curiae on behalf of Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jay-Allen Eisen
Downey Brand
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
(916) 444-1000

Jeffry A. Miller
Lewis Brisbois Bisgaard & Smith
701 B Street, Suite 1900
San Diego, CA  92101
(619) 699-4971