Filed 12/20/23; Certified for Publication 1/8/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA RUIZ PEREZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> OAKDALE IRRIGATION DISTRICT, <br><br> Defendants and Respondents. | F084621 <br><br> (Stanislaus Super. Ct. No. CV-19-004901) <br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Stanislaus County. John D. Freeland, Judge.

Carcione, Henderson & Markowitz, and Joshua S. Markowitz for Plaintiffs and Appellants.

Horvitz & Levy, Mark A. Kressel, and Rebecca G. Powell; Rankin Stock Heaberlin Oneal, Jeffrey F. Oneal, and Christopher T. Yamada, for Defendant and Respondent.

-ooOoo-

Hector Evangelista and Giselle Evangelista (decedents), the husband and daughter of plaintiff and appellant Maria Ruiz Perez, respectively, tragically perished after a collision left their vehicle overturned in a "drain," where they drowned. Perez and Hector's minor son and daughter (plaintiffs) sued Oakdale Irrigation District on a theory the water level in the drain was, or resulted from, a dangerous condition of public

property. The trial court granted summary judgment on several grounds, including that "canal immunity" (Gov. Code, § 831.8, subd. (b))[1] defeated recovery.

On appeal, plaintiffs contends that canal immunity applies only when the injured party *volitionally* used the public property at issue. We reject plaintiffs' reading of the statute and affirm the judgment.

## FACTS

In August 2019, plaintiffs filed a complaint for tort damages against defendant Oakdale Irrigation District (OID), among others. The complaint alleged that Hector and Giselle Evangelista died on August 7, 2018, when their motor vehicle overturned and ended up in the Crane Drain. It was later established that Giselle, age 16, was driving the vehicle at the time and did not have a driver's license. The two occupants drowned in irrigation water. The complaint alleged that public property owned, operated, possessed, used, constructed, built, controlled, repaired, and maintained by OID and other defendants was in a dangerous condition and caused the decedents' death.

OID denied the allegations of the complaint. OID also pleaded several affirmative defenses, including that it was immune from liability pursuant to section 831.8.

On October 15, 2021, OID filed a motion for summary judgment. The motion was made on three grounds: that OID was immune from liability under section 831.8; that OID did not construct, design, maintain or have responsibility for Patterson Road or the drain; and that OID cannot be liable under the common law theory of negligence.

In the supporting papers, OID claimed the following facts were undisputed. The portion of the drain where the decedents' vehicle landed is owned and maintained by private landowners.[2] OID did not design, plan, or construct the drain nor the roadway

---

[1] All further undesignated statutory references are to the Government Code unless otherwise stated.

[2] OID had an easement interest in the drain from 2007 to 2011 but abandoned its interests in March 2011.

2.

where the collision occurred. The drain's sole intended purpose was to distribute tailwater and rainwater.

Plaintiffs filed an opposition to OID's motion on March 2, 2022. Plaintiffs argued that section 831.8, subdivision (b) immunity does not apply because the decedents were not "using" the subject drain. They further contended that there were disputes of material fact, including as to whether OID controls the drain. They contended that evidence showed OID controlled whether the water that enters the Crane Drain can exit downstream. Finally, plaintiffs urged that ordinary negligence principles apply to OID.

On May 3, 2022, the court granted OID's motion for summary judgment and entered a defense judgment.[3] Plaintiffs appeal.

## I. Canal Immunity Applies When the Injured Person Interacts with the Canal, Conduit or Drain in a Manner Unintended by the Government, even if that Interaction Was Not Volitional

In 1961, the Supreme Court abolished the common law rule of governmental immunity in *Muskopf v. Corning Hospital Dist.* (1961) 55 Cal.2d 211. "In response to *Muskopf,* the Legislature temporarily suspended the decision's effect [citation] and directed the California Law Revision Commission to complete a study of the issue it had begun some years earlier [citations]. The end product of the commission's study was a series of recommendations .…" (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803, fn. omitted.)

The study was authored by Professor Arvo Van Alstyne. (Study Relating to Sovereign Immunity (Jan. 1963) 5 Cal. Law Revision Com. Rep. (1963) p. 1.) The recommendations were made by the California Law Revision Commission (CLRC) itself. (See, e.g., Recommendation Relating to Sovereign Immunity, No. 1 – Tort Liability of Public Entities and Public Employees (Jan. 1963) 4 Cal. Law Revision Com. Rep. (1963) p. 801.)

---

[3] The court also sustained several objections offered by defendant against plaintiffs' evidence, while overruling one.

At the request of the CLRC, and in reliance on their recommendations, Senator James Cobey introduced Senate Bill No. 42 (1963 Reg. Sess.) (Senate Bill 42). (*Quigley v. Garden Valley Fire Protection Dist.*, *supra*, 7 Cal.5th at p. 803.) As subsequently enacted, Senate Bill 42 added several provisions to the Government Code, including section 831.8, subdivision (b) which currently[4] provides:

> "Subject to subdivisions (d) and (e), neither an irrigation district nor an employee thereof nor the state nor a state employee is liable under this chapter for an injury caused by the condition of canals, conduits, or drains used for the distribution of water if at the time of the injury the person injured was using the property for any purpose other than that for which the district or state intended it to be used." (*Ibid*.)

This provision establishes what is commonly referred to as canal immunity. With important limitations, it immunizes the government against liability for injuries caused by the condition of canals, conduits, or drains. For present purposes, the most important boundary to the scope of this immunity is the conditional clause at the conclusion of subdivision (b), providing that canal immunity applies "if at the time of the injury the person injured was using the property for any purpose other than that for which the district or state intended it to be used." (§ 831.8, subd. (b).)

We must determine how this statute applies to the circumstances of the present case. When interpreting a statute, our fundamental task is to determine the Legislature's intent so as to effectuate the law's purpose. (*Raines v. U.S. Healthworks Medical Group* (2023) 15 Cal.5th 268, 278.) If, and only if, the plain meaning of the words of the statute do not resolve the question, we turn to extrinsic aids such as legislative history. (*Environmental Health Advocates, Inc. v. Sream, Inc.* (2022) 83 Cal.App.5th 721, 729.)

---

[4] Except for the citations to subdivisions (c) and (d) being re-lettered to subdivision (d) and (e), this language is identical to how it was originally enacted in 1963. (See Stats. 1963, c. 1681, p.3274.)

### *Reasonable Interpretations*

One interpretation of the conditional clause at the end of subdivision (b) is that it limits immunity to circumstances where the injured party volitionally interacted with the property. This interpretation emphasizes the plain meaning of the word "use," which is to put into service, to employ, or to avail oneself of. (*People v. Love* (2008) 166 Cal.App.4th 1292, 1297–1298.)

We agree that most examples of someone "using" something involve an intentional interaction. However, we note that is not always the case. For example, a coma patient may be "using" a breathing machine, even though his use is not volitional. Or, a man might say his wife is "using" a blanket, even though her use is not volitional because he put it on her after she fell asleep. Or, as even plaintiffs put it, the decedents in this case were "using" the property adjacent to the roadway as a recovery zone after the collision.[5]

Moreover, while it cannot be denied that most examples of "using" something for a "purpose," involve *volitional* interaction, it is important to remember that the specific context here is canals, conduits, and drains. Individual members of the public simply do not have many uses for such properties at all – volitional or otherwise. While there certainly are some volitional uses – like swimming in a canal – it is not difficult to imagine that some notable portion of public interactions with canals, conduits or drains are unintentional.

Another interpretation of the conditional clause is that the Legislature was defining the scope of immunity negatively. That is, the Legislature was describing a specific circumstance in which immunity does not apply (i.e., when the property is being

---

[5] Plaintiffs cite to *Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 775, which in turn quoted a CalTrans Manual for the proposition that a recovery zone next to roadways is advisable. Putting aside the propriety of plaintiffs trying to bring in the CalTrans Manual in a roundabout way, we note that any absence of a clearing next to the lanes of travel would, at most, be an issue with the design of the roadway, not a dangerous condition of the drain.

used for its intended purpose), and then providing for immunity in all other situations where an injury arises from the condition of a canal, conduit or drain. Under this approach, immunity would apply to *all* injuries that did not arise while the property was being used as intended by the government. This would include circumstances where the injured party did not intentionally interact with the property, so long as the type of interaction was not intended by the government.

This conceptualization is supported by the clause's use of the phrasing "any purpose other than" – language often employed to define something in the negative. And while "using" something often involves intentionality, we cannot think of a better word to substitute in for "using" if indeed the Legislature intended to define the scope of immunity in that fashion.

### *Contrasting Intents Evinced by the Two Interpretations*

We are therefore presented with two reasonable constructions of the statute. To determine which is to be given effect, we must continue to be guided by the intent of the Legislature. In the present context, that means we must determine *why* and *how* the Legislature sought to limit canal immunity with the conditional clause at the end of subdivision (b).

The two interpretations identified above would evince different legislative intents. The first interpretation would result in a dichotomy centered on "fault," as it provides immunity only where the injured party has intentionally "used" public property contrary to its purpose. That is, injured parties who *intentionally* used public property in a manner unintended by the government would be unable to recover for their injuries, while injured parties whose interaction with the public property was *unintentional* (and therefore faultless) would not face governmental immunity. Plaintiffs describe this as "essentially" akin to "an assumption of risk."

In contrast, the second interpretation would treat intentional and unintentional interactions (i.e., uses) of public property the same, as long as those interactions were not

6.

among the purposes envisioned the government. Such a statute would evince a concern with how *foreseeable* the injury was to the *government*, rather than how much *responsibility* the *injured person* assumed.

For the reasons explained in further detail below, we conclude the second interpretation better encapsulates legislative intent.

### *Broad Legislative Intent Behind Senate Bill 42*

Before we turn to the CLRC's recommendations, we will briefly acknowledge the shortcomings of legislative history as an indicator of legislative intent. We can only say with certainty that legislative history materials reflect the intent of the legislator(s), committee or group that authored them. While knowing the intent of these individuals or groups can be helpful, the only intent that ultimately matters is that of the majority of the Legislature that passed the legislation. (Cal. Const., art. IV, § 8(b).) The legislators who voted to pass the bill but did not author or sign on to the legislative history materials, may have had different reasons or intents behind their votes. It is only the statutory text itself that unquestionably had the support of the majority of the legislature and, therefore, the force of law. (*Ibid.*)

All that said, we believe the CLRC's recommendations have uniquely compelling weight here. First, the Legislature specifically directed the CLRC's work, and the Legislature relied upon it in enacting Senate Bill 42. (*Quigley v. Garden Valley Fire Protection Dist.*, *supra*, 7 Cal.5th at p. 803.) Moreover, Senator James Cobey, who introduced Senate Bill 42, sat on the CLRC at the time, and introduced the bill "[a]t the request of [the] California Law Revision Commission." Consequently, we find it to be a helpful indicator of legislative intent.

One of the CLRC's recommendations was that a "dangerous condition" of public property "should be defined in terms of the manner in which it is *foreseeable* that the property will be used by persons exercising due care in recognition that any property can

be dangerous if used in a sufficiently *abnormal* manner."[6] (Recommendation Relating to Sovereign Immunity, No. 1 – Tort Liability of Public Entities and Public Employees, *supra*, 4 Cal. Law Revision Com. Rep. at p. 822, italics added.) "[P]ublic entities should not be required to guard against the potentialities of injury that arise from *remotely* foreseeable uses of their property. To impose such liability would virtually require public entities to insure the safety of all persons using public property."[7] (*Id*. at pp. 822–823, italics added.)

---

[6] Similarly, Van Alstyne's study stated that "the duty to maintain public property in a reasonably safe condition does not require the entity to *foresee* risks which might arise in connection with *unusual*, *unexpected*, and *unauthorize*d uses." (A Study Relating to Sovereign Immunity, *supra*, 5 Cal. Law Revision Com. Rep. at p. 46.)

[7] In this discussion, the CLRC Recommendation also observes, "where it is reasonably foreseeable that persons to whom a lower standard of care is applicable – such as children – may, consistently with the standard of care applicable to such persons, use property for an *unintended* purpose, the public entity should be required to take reasonable precautions to prevent an undue risk of injury arising from such use." (Recommendation Relating to Sovereign Immunity, No. 1 – Tort Liability of Public Entities and Public Employees, *supra*, 4 Cal. Law Revision Com. Rep., at p. 822, italics added.)

Section 831.8 makes just such a carve-out in its subdivision (e), which provides:

"(e) Nothing in this section exonerates a public entity or a public employee from liability for injury proximately caused by a dangerous condition of property if all of the following occur:

"(1) The person injured was less than 12 years of age.
"(2) The dangerous condition created a substantial and unreasonable risk of death or serious bodily harm to children under 12 years of age using the property or adjacent property with due care in a manner in which it was reasonably foreseeable that it would be used.
"(3) The person injured, because of his or her immaturity, did not discover the condition or did not appreciate its dangerous character.
"(4) The public entity or the public employee had actual knowledge of the condition and knew or should have known of its dangerous character a sufficient time prior to the injury to have taken measures to protect against the condition." (§ 831.8, subd. (e).)

Thus, while these aspects of the CLRC's Recommendations were part of a broad discussion of government liability rather than canal immunity specifically, we find it germane that section 831.8 seems to implement these principles, nuance and all.

According to this discussion, whether public property is being "used" in accordance with its intended purpose at the time of injury is relevant because it speaks to foreseeability. The CLRC Recommendation posits that recovery should be barred when the property is used "in a sufficiently abnormal manner" because such injuries are less foreseeable by the government.

A use of public property that is contrary to the purpose intended by the government is generally less foreseeable, even – or perhaps especially – when that use is unintentional. For example, landing in a drain after a nearby vehicle collision (unintentional) or being hurt while paddleboarding in the drain (intentional) are both less foreseeable than an adjacent homeowner being injured while moving debris to allow storm water to enter the drain (a use consistent with the purpose of the drain). If the Legislature was indeed focused on foreseeability, it would not draw the line between volitional and involuntary, but instead between whether the use was consistent or inconsistent with the government's intended purpose.

Consequently, the second interpretation – based on foreseeability rather than assumption of the risk – is better supported by the legislative intent behind the statute.

### *Legislative History Concerning Section 831.8*

Not only is this interpretation supported by the general intent behind Senate Bill 42, but also by a committee report regarding section 831.8 specifically. The Assembly Committee on Ways and Means prepared a report on Senate Bill 42, which included a comment on section 831.8 specifically.[8] That comment described the canal/drain immunity as applying "if the person injured was not using the property for its intended purpose." (Assem. Comm. on Ways and Means letter to Speaker of the

---

[8] In its letter of transmittal to the Speaker of the Assembly, the committee said that the report contained comments reflecting the actions the committee took on the bill. (Assem. Comm. on Ways and Means letter to Speaker of the Assembly, 3 Assem. J. (1963 Reg. Sess.) p. 5439.) The letter provided the report's comments "should prove helpful in determining legislative intent." (*Ibid.*) The report was printed in the Assembly Journal.

Assembly, 3 Assem. J., *supra*, at p. 5440.)  This is the type of negative definition consistent with the second interpretation.  It provides for immunity in all circumstance other than the injured person using the property for its intended purpose.

### *Cases Interpreting Other Statutes are Not Helpful*

Plaintiffs cite *Delta Farms Reclamation Dist. v. Superior Court* (1983) 33 Cal.3d 699, which observed that section 831.8, subdivision (a) clearly applied principally to water sports.  Plaintiffs do not explain how this case helps them.  However, we note subdivision (a), unlike subdivision (b), provides government immunity relating to reservoirs.  The fact that reservoir immunity applies principally to water sports does not mean that immunity relating to the condition of a *drain* also principally applies to water sports.  In any event, identifying what the statute *principally* applies to does not, by definition, set the outer bounds of its applicability.  In sum, we find *Delta Farms*'s discussion of subdivision (a) unhelpful in interpreting subdivision (b).

Nor do we find helpful *Milligan v. City of Laguna Beach* (1983) 34 Cal.3d 829, which dealt with section 831.2, providing government immunity for injuries caused by natural conditions of unimproved public property.  Section 831.2 contains no verbiage analogous to the conditional clause in section 831.8, subdivision (b), which we are tasked with interpreting here.[9]

Plaintiffs also observe that other subdivisions of the statute provide other exceptions to immunity.  (See § 831.8, subds. (d)–(f).)  But they do not suggest the injury here falls under those subdivisions.  Instead, they posit that "taken together" the

---

[9] Plaintiffs also observe that *Milligan* recognized a distinction between injuries sustained by an adjacent landowner versus a direct user of the public land.  Plaintiffs cite to a statement in *Milligan*, "nonusers of the government land do not receive the reciprocal benefit of use, and the principle of fairness has no application."  But the "government land" here was a drain used, at least in part, for distributing tailwater.  This is a broad benefit to the public, and decedents may very well have been beneficiaries of the drain's function.  Moreover, it would be exceedingly difficult to craft a rule based on finding out whether injured parties received any benefit from a canal, conduit or drain.

provisions of section 831.8 establish that immunity applies to people who *knowingly* use a canal, conduit or drain "despite being aware of the potentially dangerous nature of the water feature." We fail to see how the inapplicable subdivisions bear on plaintiffs' interpretation.

### *Conclusion*

For these reasons, we conclude subdivision (b) only places a single limitation on state/irrigation district immunity for injuries caused by the condition of canals, conduits, or drains; immunity does not apply when the person injured was using the property for a purpose intended by the district or state.[10]

Therefore, we reject plaintiffs' challenges to the immunity basis for summary judgment and affirm.[11]

## DISPOSITION

The judgment is affirmed.

POOCHIGIAN, J.

WE CONCUR:

LEVY, Acting P. J.

DE SANTOS, J.

---

[10] Subdivisions (d) and (e) of section 831.8 identify additional circumstances in which immunity does not apply.

[11] We therefore do not reach the other, independently sufficient, grounds for summary judgment urged by defendant or relied upon by the trial court, nor the evidentiary rulings that are not dispositive in light of our conclusion.

11.

Filed 1/8/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIA RUIZ PEREZ et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> OAKDALE IRRIGATION DISTRICT, <br><br> Defendant and Respondent. | F084621 <br><br> (Stanislaus Super. Ct. No. CV-19-004901) <br><br><br> **ORDER GRANTING REQUEST FOR PUBLICATION** |

As the nonpublished opinion filed on December 20, 2023, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c)(2), it is ordered that the opinion be certified for publication in the Official Reports.

POOCHIGIAN, J.

WE CONCUR:

LEVY, Acting P. J.

DE SANTOS, J.

1.