# IN THE SUPREME COURT OF CALIFORNIA

LAW FINANCE GROUP, LLC,
Plaintiff and Appellant,

v.

SARAH PLOTT KEY,
Defendant and Respondent.

S270798

Second Appellate District, Division Two
B305790

Los Angeles County Superior Court
19STCP04251

June 26, 2023

Justice Kruger authored the opinion of the Court, in which
Chief Justice Guerrero and Justices Corrigan, Liu, Groban,
Jenkins, and Evans concurred.

LAW FINANCE GROUP, LLC v. KEY

S270798


Opinion of the Court by Kruger, J.


Law Finance Group, LLC, prevailed in an arbitration against Sarah Plott Key and filed a petition to confirm the award. Key filed a response seeking vacatur of the award, but she did so outside the 100-day deadline prescribed by Code of Civil Procedure section 1288.2. The primary questions now before us are whether, as the Court of Appeal held, this 100-day deadline is jurisdictional and, if not, whether the deadline is subject to the equitable doctrines of tolling and estoppel. We hold that the section 1288.2 deadline neither is jurisdictional nor otherwise precludes equitable tolling or estoppel. We remand for the Court of Appeal to determine in the first instance whether Key is entitled to equitable relief from the deadline.

**I.**

The question in this case arises from a dispute within a dispute. After her parents' death, Sarah Plott Key became embroiled in a disagreement with her sister, Elizabeth Plott Tyler, over the disposition of the Plott Family Trust (the Trust). Under the terms of the Trust, Key's parents had provided equally for their three daughters, so that each would inherit a one-third interest in the parents' estate. When her mother died, Key expected to receive her one-third share. She soon learned, however, that several years before, her mother had executed an amendment to the Trust that effectively disinherited Key of millions of dollars. Believing the disinheritance was her sister's

1

handiwork, Key filed a probate action against Tyler, alleging that Tyler had procured the Trust amendment through undue influence over their mother.

Key soon encountered difficulties in litigating the probate action. On the eve of trial, Key had run out of money to pay her litigation expenses, and her attorneys threatened to withdraw from the case. To continue financing the litigation, Key turned to Law Finance Group, LLC (which, for simplicity's sake, we will refer to as Lender), a California-licensed finance lender. The business relationship between Key and Lender would soon result in a second dispute, which gives rise to the issues now before us.

Key and Lender entered a contract (the Agreement) under which Lender agreed to loan Key up to $3 million to pay her attorneys' fees, and Key ultimately borrowed $2.4 million for that purpose. Lender charged interest at a rate of 1.53 percent per month, compounded monthly, with additional compound interest of 0.5 percent accruing monthly in the event of default. The Agreement also charged a due diligence fee of up to $10,000, an origination fee of $60,000, and a monthly loan-servicing fee of 0.25 percent of the outstanding loan principal. The loan was nonrecourse, meaning that Key's potential liability under the loan was limited to her interest in the Trust and that Lender would not have recourse to her other assets for repayment. The Agreement also included an arbitration provision.

Key ultimately prevailed in the probate action against Tyler, winning entitlement to one-third of her parents' estate, equivalent to about $20 million. Upon the successful completion of the litigation, Key repaid Lender the $2.4 million loan principal. But she refused to pay any of the interest or fees,

claiming they were unlawful under the California Financing Law (Fin. Code, § 22000 et seq.), which restricts the interest and fees that can be charged on consumer loans (see *id.*, §§ 22306 [forbidding charges not allowed by statute], 22309 [forbidding compound interest]; see also *id.*, § 22001, subd. (b) [making these provisions applicable to consumer loans]).

Lender submitted the dispute to arbitration, seeking about $3.5 million in unpaid compound interest and fees. The arbitration panel concluded that the Agreement was generally enforceable but that the interest and fee provisions violated the California Financing Law. The panel agreed with Key that because the loan was meant to finance a dispute about her parental inheritance, the loan should be classified not as a "commercial loan" but as a "consumer loan" — that is, a loan "the proceeds of which are intended by the borrower for use primarily for personal, family, or household purposes" (Fin. Code, § 22203) — and that as such, the loan was subject to the statute's restrictions on compound interest and certain other fees. In so concluding, the panel rejected Lender's argument that the loan was exempt from those prohibitions as a loan with a bona fide principal amount of $5,000 or more. (See *id.*, § 22250, subd. (b).)

The panel disagreed, however, with Key's further argument that, as a consequence of its efforts to charge the disputed compound interest and fees, Lender should be barred from recovering any amount under the Agreement beyond the principal she had already repaid. Key's argument relied on Financial Code section 22750, subdivision (a), which says that if a loan contract "willfully" charges "any amount other than, or in excess of, the charges permitted by" the California Financing Law, "the contract of loan is void, and no person has any right

to collect or receive any principal, charges, or recompense in connection with the transaction." Rejecting the argument, the panel calculated "a fair computation of damages" based on what Key would have owed if the Agreement had charged simple, rather than compound, interest at the designated monthly rate, plus an additional assessment for default interest. In total, the panel awarded Lender about $800,000 in damages, plus substantial attorneys' fees and costs, and it also required Key to cover the arbitration forum's administrative expenses.

The arbitration panel served the parties with the final award on September 19, 2019. On October 1, Lender filed a petition in superior court to confirm the award.

On October 10, Key's attorney called Lender's attorney to discuss various procedural matters related to Lender's petition. On that phone call, Key's attorney informed Lender that Key planned to file a petition to vacate the award in addition to her response in opposition to Lender's petition to confirm. They also discussed their mutual understanding that under Code of Civil Procedure section 1290.6 (section 1290.6), Key had 10 days from the filing of the petition to confirm — that is, until October 11, the next day — to file her response to the petition. The attorneys agreed to extend the time for response. The attorneys further agreed to coordinate a hearing date so that the trial court could consider both Lender's petition to confirm and Key's petition to vacate at the same time, and to set a briefing schedule for both petitions corresponding to that date. In exchange for Lender's agreement to extend the October 11 deadline and adhere to the joint briefing schedule, Key agreed to waive personal service of Lender's petition to confirm and to use a peremptory challenge to disqualify the assigned trial judge. Key's attorney memorialized their agreement in a follow-

4

up e-mail, noting that the parties had "agreed that the 10 day time period for filing a Petition to Vacate will not apply" and that the parties would "work backwards" from the hearing date "to come up with a briefing schedule [that] will include oppositions and replies."

On December 12 — 84 days after service of the arbitral award — Lender's attorney e-mailed Key's attorney asking, "Do you know when your substantive petition is due?  I know we talked conceptually about timelines way back.  I just don't know with the hearing date set . . . whether we need to revisit that or, just go according to standard timing."  Key's attorney did not respond.  On January 21, Key's attorney e-mailed Lender's attorney, informing him that he was "getting [the] moving papers prepared" and stating:  "Looks like the last day to file and serve is January 27."  The attorneys corresponded by phone shortly after to finalize the details of filing and serving the documents.

On January 27 — 130 days after service of the arbitral award — Key filed her petition to vacate the award.  Then, on February 5 — 139 days after service — Key filed her response in opposition to Lender's petition to confirm, in which she also argued that the trial court should vacate the award.  Key's primary contention in both filings was that the arbitration panel exceeded its authority by enforcing a modified version of the Agreement despite concluding that Lender had attempted to charge unlawful compound interest and fees.  She argued that, rather than reform the contract by requiring Key to pay simple interest, the arbitration panel should have declared the loan void under Financial Code section 22750, subdivision (a), and forbidden Lender from collecting any recompense in connection with the transaction.

In response, Lender argued that Key's request to vacate was untimely because neither her petition to vacate nor her response to Lender's confirmation petition was filed within 100 days after service of the final award, as Code of Civil Procedure section 1288 requires for a petition to vacate, and as Code of Civil Procedure section 1288.2 also requires for a response requesting vacatur.

The trial court denied Key's petition to vacate as untimely under Code of Civil Procedure section 1288 but deemed her response to Lender's petition to confirm "timely under [section] 1290.6," in view of the attorneys' agreement to a joint briefing schedule. On the merits, the trial court agreed with Key that the arbitrators "violate[d] [Key's] unwaivable statutory rights" and "contravene[d] an explicit legislative expression of public policy" by refusing to void the contract under Financial Code section 22750 and instead limiting Lender's recovery. The trial court accordingly vacated the award.

The Court of Appeal reversed. (*Law Finance Group, LLC v. Key* (2021) 67 Cal.App.5th 307, 313, 325.) Unlike the trial court, the appellate court concluded that the response requesting vacatur was untimely under Code of Civil Procedure section 1288.2, which imposes a 100-day deadline for a response to a petition to confirm when the response requests that the award be vacated. (*Law Finance Group*, at pp. 313, 316–321.) The court held that the 100-day deadline was jurisdictional and that the parties therefore lacked the power to extend it by stipulation. (*Id.* at p. 322; see *id.* at pp. 321–324.) The court also rejected Key's argument that she could raise her challenges to the arbitration award regardless of whether she filed a timely request to vacate because the Agreement was an illegal contract that courts may not enforce. (*Id.* at p. 322, fn. 8.)

6

We granted review.

## II.

The California Arbitration Act (Act) (Code Civ. Proc., § 1280 et seq.) is " 'a comprehensive statutory scheme regulating private arbitration in this state.' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 380.) The Act sets out procedures governing judicial proceedings related to arbitration, including both prearbitration disputes related to the enforceability of agreements to arbitrate and postarbitration disputes to settle the status of an arbitral award. (See Code Civ. Proc., pt. 3, tit. 9, ch. 5 ["General Provisions Relating to Judicial Proceedings"].) Whether the context is pre- or postarbitration, the general pleading rules governing the commencement of the proceeding are the same. The proceeding begins with the filing of a petition, and any person named as a respondent in that petition may file a response. (Code Civ. Proc., § 1290.) In general, "[a] response shall be served and filed within 10 days after service of the petition," unless that time is "extended by an agreement in writing between the parties to the court proceeding or, for good cause, by order of the court." (§ 1290.6.)

The Act also sets out a more specific set of procedures governing postarbitration proceedings, including deadlines by which parties seeking to confirm or vacate an arbitral award must file those requests with the court. (See Code Civ. Proc., pt. 3, tit. 9, ch. 4 ["Enforcement of the Award"].) A party seeking to confirm the arbitral award may file a petition within four years of the service of the final award.[1] (Code Civ. Proc., § 1288.) A

---

[1] Under California law, an arbitration award has the status of a contract between the parties. (Code Civ. Proc., § 1287.6.) The four-year limitations period to file a petition to confirm matches the limitations period for an action for breach of contract.

party seeking to vacate the arbitral award, however, has much less time. A request to vacate may be made either in a petition to vacate (*id.*, § 1285) or in a response to the petition to confirm (*id.*, § 1285.2). Regardless of the method, the Act imposes the same deadline: "A petition to vacate an award . . . shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner" (*id.*, § 1288), and identically, "[a] response requesting that an award be vacated . . . shall be served and filed not later than 100 days after the date of service of a signed copy of the award" on the respondent (*id.*, § 1288.2).

In this case, Key filed a petition to vacate the arbitral award some 130 days after service of the final award. Nine days later, she filed a response to Lender's petition to confirm in which she likewise requested that the award be vacated. It is undisputed that Key's first request to vacate was untimely, because her petition to vacate was filed outside the 100-day limit set by Code of Civil Procedure section 1288 (section 1288). The threshold question we must address is whether Key's failure to meet the 100-day deadline set by Code of Civil Procedure section 1288.2 (section 1288.2) rendered her second request to vacate untimely as well. Key argues the answer is no, because she filed that request within the time period allowed under section 1290.6 for responding to Lender's confirmation petition. Lender does not dispute that Key's response was filed within the time limits described in section 1290.6 but argues that the request to

(Recommendation and Study Relating to Arbitration (Dec. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. G-9 (hereafter Recommendation); Code Civ. Proc., § 337, subd. (a).)

vacate the award was nonetheless untimely under section 1288.2. Lender is correct.

Under the plain terms of sections 1288 and 1288.2, Key had 100 days from the service of the final award to request that the arbitration award be vacated — whether she chose to do so via a standalone petition to vacate or via a response to Lender's petition to confirm the award. Key's argument that her 139-day filing was nonetheless timely depends on the proposition that section 1290.6 — a general statutory provision permitting parties to extend the default 10-day period for any responsive filing in an arbitration matter — supersedes the specific 100-day deadline for requesting that an arbitration award be vacated, at least when a petition to confirm has been filed within 100 days of the award's service. But under the governing statutes, neither deadline supersedes the other. On the contrary, when a filing both (1) responds to a petition to confirm, and (2) requests that the arbitration award be vacated, both deadlines apply: (1) Absent a written agreement or court order, the response must be filed within 10 days after service of the petition to confirm and (2) in any event, no later than 100 days after service of the award.[2] This rule respects the plain language of both provisions without reading an unnecessary conflict into the statutory scheme. (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 ["[S]tatutes or statutory sections relating to the same subject

---

[2] We need not and do not decide whether a party that fails to file a timely response under section 1290.6 may nevertheless request vacatur in a petition to vacate filed within the limitations period of section 1288. (See *Darby v. Sisyphian, LLC* (2023) 87 Cal.App.5th 1100, 1110, fn. 7.)

must be harmonized, both internally and with each other, to the extent possible."].)

This understanding of the operation of the 100-day deadline is consistent with the Legislature's evident purpose in enacting it. (See *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 ["Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute."].) To promote arbitral finality and judicial economy, the Legislature deliberately put proceedings to vacate on a different timeline than the more leisurely timeline for proceedings to confirm an arbitration award.

In its study recommending the relevant revisions to the arbitration statutes, the California Law Revision Commission explained that the prevailing party in arbitration should normally be able to obtain satisfaction of the award without resorting to the courts for confirmation. If the losing party refuses to comply, however, the confirmation procedure provides "a method of expeditiously enforcing an arbitration award." (Recommendation (Dec. 1960) 3 Cal. Law Revision Com. Rep., *supra*, at p. G-9; see Feldman, *Arbitration Modernized — The New California Arbitration Act* (1961) 34 So.Cal. L.Rev. 413, fn. 1 [noting that the Legislature unanimously enacted the California Law Revision Commission's draft bill without changes].) That mechanism remains available for four years, preserving a remedy for the prevailing party even if the refusal to comply with the terms of the award occurs long after its service. (3 Cal. Law Revision Com. Rep., at p. G-9.)

By contrast, if the losing party wishes to attack the award, the statutes make clear that such a challenge must be made promptly to promote the timely final resolution of the matters

submitted to arbitration. (See Recommendation (Dec. 1960) 3 Cal. Law Revision Com. Rep., *supra*, at p. G-58.) If such a challenge is made, the Act requires the court to settle all issues relating to the status of the arbitral award in a single proceeding, by either confirming the award (as rendered or as corrected by the court) or by vacating it. (Code Civ. Proc., § 1286 ["If a petition or response under this chapter is duly served and filed, the court shall confirm the award as made . . . unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding."]; 3 Cal. Law Revision Com. Rep., at p. G-9 ["When a court entertains any proceeding relating to an award, it should finally settle the status of the award so that it will be unnecessary for the parties to return to the court at a later time for another determination of the status of the award."].) Reading the 100-day limitations period as a statutory outer boundary on the timeliness of a vacatur request, even when the request is made in response to a petition to confirm, respects the Legislature's evident purpose to promote the efficient final resolution of disputes decided in arbitration.

Key argues that it would do no harm to the Legislature's aims if we were to recognize a modest exception for circumstances when the prevailing party files a petition to confirm within the first 100 days after the service of the award, as Lender did here, rather than later in the four-year limitations period. But the statute contains no exception based on when the petition to confirm is filed. And there is nothing modest about recognizing a statutory exception the Legislature did not write.

Key cites several Court of Appeal cases as support for her position. But as she acknowledges, none of those cases actually confronted the situation here, where the party seeking to vacate

the award complied with the general section 1290.6 deadline for responses in arbitration matters, but not section 1288.2's 100-day deadline for responses requesting vacatur. In several of them, the losing party to the arbitration complied with the 100-day deadline, so the court had no occasion to consider the consequences of a failure to adhere to that deadline. (*Rivera v. Shivers* (2020) 54 Cal.App.5th 82, 93–94; *Oaktree Capital Management, L.P. v. Bernard* (2010) 182 Cal.App.4th 60, 64–66 (*Oaktree Capital Management*); *Coordinated Construction, Inc. v. Canoga Big "A," Inc.* (1965) 238 Cal.App.2d 313, 316–317.) In every other case, the losing party to the arbitration failed to comply with both section 1290.6 and section 1288.2 — meaning that those cases also had no reason to determine whether one deadline superseded the other. (*Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1081–1082; *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 384–385; *Santa Monica College Faculty Assn. v. Santa Monica Community College Dist.* (2015) 243 Cal.Ap.4th 538, 543–545; *Eternity Investments, Inc. v. Brown* (2007) 151 Cal.App.4th 739, 742, 745; *Lovret v. Seyfarth* (1972) 22 Cal.App.3d 841, 847–849, 856 (*Lovret*); *DeMello v. Souza* (1973) 36 Cal.App.3d 79, 83–84 (*DeMello*).) None of the cited cases stand for the rule that Key presses here — and, to the contrary, several of the cases plainly state that a party seeking to vacate an award must raise that challenge within 100 days of the award's service. (See, e.g., *Eternity Investments*, at p. 746 ["[T]he Browns did not serve or file a *petition* or *response* to correct or vacate the award before the 100-day period expired. . . . At that point, it was too late for the Browns to seek correction or vacatur."].)

To conjure support for her position, Key plucks sentences in those decisions from their factual context. For example, she

notes that some cases have characterized section 1290.6 as an "exception" to section 1288.2 that applies when the prevailing party in arbitration has filed a petition to confirm. (E.g., *Oaktree Capital Management, supra,* 182 Cal.App.4th at pp. 66–67; *DeMello, supra,* 36 Cal.App.3d at p. 83; see also, e.g., *Lovret, supra,* 22 Cal.App.3d at p. 856 [stating that when a petition to confirm is filed, "the time for filing a response is governed by section 1290.6 and not section 1288.2" (fn. omitted)].) Considered in their factual context, though, those statements mean only that section 1290.6 may *shorten* the time for filing a response requesting vacatur when a confirmation petition has been filed. In other words, a party may not get the full benefit of the 100-day deadline for filing a response seeking vacatur if section 1290.6 dictates a shorter timeline. The cases do not hold, as Key now urges, that section 1290.6 could *extend* that time beyond section 1288.2's 100-day limitations period.

## III.

### A.

Having established that Key's vacatur requests were filed outside the applicable statutory period, we move to the central issue before us. Key argues that her untimely filing should be accepted under the doctrines of equitable tolling and equitable estoppel. Lender, for its part, argues that those doctrines do not apply because section 1288.2's deadline is jurisdictional, which means the courts have no power to adjust it for equitable reasons. The Court of Appeal agreed with Lender that section 1288.2 sets out a jurisdictional limitation. We disagree and hold that section 1288.2 is not jurisdictional in the relevant sense.

As we have often observed, "the term 'jurisdiction' has 'many different meanings.'" (*Quigley v. Garden Valley Fire*

*Protection Dist.* (2019) 7 Cal.5th 798, 807 (*Quigley*), quoting *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 287.) Lender's jurisdictional argument in this case concerns what we have called the courts' "fundamental" jurisdiction. "A lack of fundamental jurisdiction is ' " 'an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' " ' " (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339 (*Kabran*), quoting *People v. Lara* (2010) 48 Cal.4th 216, 224.) Because a lack of fundamental jurisdiction implicates "the basic power of a court to act," courts must enforce jurisdictional limitations even if considerations of waiver, estoppel, consent, or forfeiture might otherwise excuse a party's failure to comply with them. (*Quigley*, at p. 807; see also *Wilkins v. United States* (2023) 598 U.S. ___, ___ [143 S.Ct. 870, 876] (*Wilkins*); *Boechler, P.C. v. Commissioner of Internal Revenue* (2022) 596 U.S. ___, ___ [142 S.Ct. 1493, 1497] (*Boechler*).) In other words, when a party fails to comply with a jurisdictional time bar, the court has no choice but to dismiss the case for lack of jurisdiction, even if equitable concerns would support reaching the merits.

Because of those harsh consequences, we apply a "presumption that statutes do not limit the courts' fundamental jurisdiction absent a clear indication of legislative intent to do so." (*Quigley, supra,* 7 Cal.5th at p. 808, citing, e.g., *Kabran, supra,* 2 Cal.5th at pp. 342–343; see *Wilkins, supra,* 598 U.S. at p. ___ [143 S.Ct. at p. 876].) This approach reflects " 'a preference for the resolution of litigation and the underlying conflicts on their merits by the judiciary.' " (*Quigley*, at p. 808, quoting *Kabran*, at pp. 342–343.) To be sure, mandatory procedural rules — like many statutes of limitations or other filing deadlines — serve important policy goals, and courts must

enforce them when properly raised.  (See *Kabran*, at pp. 341–342.)  But we will not assume that the Legislature intended to imbue a time bar with jurisdictional consequences merely because the statute speaks in mandatory terms; as we have said, "jurisdictional rules are mandatory, but mandatory rules are not necessarily jurisdictional." (*Id.* at p. 342; see *id.* at pp. 340–342.)  To establish that a particular filing deadline is jurisdictional, more is required.  Much as the high court has said of Congress, our Legislature "must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional" in the fundamental sense. (*United States v. Kwai Fun Wong* (2015) 575 U.S. 402, 410.)

Here, nothing in section 1288.2's instructions for the timing of responses requesting vacatur clearly indicates the Legislature's intent to remove a class of cases from the court's fundamental jurisdiction.  Section 1288.2 speaks only to obligations of the litigants and makes no reference at all to the power of the courts — in other words, the section reads as an ordinary statute of limitations.  Lender argues, however, that the jurisdictional limitation resides in a neighboring section of the Act, Code of Civil Procedure section 1286.4 (section 1286.4), which admonishes that "[t]he court may not vacate" an award if the petition or response requesting vacatur is not "duly served and filed." (*Id.*, subd. (a).)  A response has not been "duly served and filed" (*ibid.*), in Lender's view, if it has not been filed in accordance with the procedural requirements of the statute, including the 100-day time limit set forth in section 1288.2.

The language of section 1286.4 differs in important respects from language we have previously regarded as evidence that the Legislature intended to mark a filing deadline as jurisdictional.  For example, the Code of Civil Procedure

prescribes deadlines for a party seeking a new trial to file a notice of intent (*id.*, § 659) and for the court to rule on the motion for a new trial (*id.*, § 660). Under those provisions, the party's time to file the notice "shall not be extended by order or stipulation" (*id.*, § 659, subd. (b)), and assuming the moving party files timely notice, "the power of the court to rule on a motion for a new trial shall expire" after a specified period (*id.*, § 660, subd. (c)). We have held that those limitations are "clear markers of legislative intent that the[] respective deadlines are jurisdictional." (*Kabran*, *supra*, 2 Cal.5th at p. 344.) While the language of the statutes governing new trial requests speaks directly to the trial court's power to act on an untimely motion, section 1286.4 does not speak directly to the power of the court to act on an untimely response. Instead, it speaks, more obliquely, of the power to act on a "duly served and filed" vacatur request. (*Id.*, subd. (a).) It is not clear from the statutory text whether this "duly served and filed" language incorporates procedural requirements found in other sections of the Code of Civil Procedure and, if so, which ones. Section 1286.4 does not, in short, speak with the clarity necessary to overcome the presumption that statutory deadlines do not limit the courts' fundamental jurisdiction.

In any event, even if we were to accept the premise that section 1286.4, subdivision (a)'s reference to a "duly served and filed" vacatur request incorporates considerations of timing, Lender's argument would still fail. The word "duly" means "[i]n a proper manner; in accordance with legal requirements." (Black's Law Dict. (11th ed. 2019) p. 633, col. 1.) Far from expressing a limitation on the courts' power to entertain a late-filed vacatur request, the phrase "duly served and filed" simply begs the question whether a vacatur request has been served

and filed in a proper manner if a court grants equitable relief from the missed deadline. (Cf., e.g., *McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 (*McDonald*) [equitable tolling will " 'suspend or extend a statute of limitations as necessary' "].)

To be sure, a court may act in excess of jurisdiction by entertaining an untimely response over a proper objection. "We have described courts that violate procedural requirements, order relief that is unauthorized by statute or common law, or otherwise ' "fail[] to conduct [themselves] in the manner prescribed" ' by law as acting ' "in *excess* of jurisdiction." ' " (See *Kabran*, *supra*, 2 Cal.5th at pp. 339–340.) Section 1288.2 speaks to the parties in mandatory terms, stating that a vacatur request "shall be served and filed not later than 100 days" after service of the award. If the trial court were to entertain an untimely response over a proper objection invoking this mandatory statute of limitations, any judgment for the responding party vacating the award might be reversible on appeal (assuming equitable considerations like waiver or estoppel do not provide grounds to excuse the untimely filing, see pt. III.B., *post*). (*Kabran*, at p. 341.) "But a party's failure to comply with a mandatory requirement 'does not necessarily mean a court loses *fundamental* jurisdiction resulting in "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties." ' " (*Ibid.*, quoting *People v. Allen* (2007) 42 Cal.4th 91, 101, fn. 5; see *Quigley*, *supra*, 7 Cal.5th at p. 813.)

In short, absent clearer evidence of legislative intent, we presume that the Legislature did not intend to limit the

fundamental jurisdiction of the courts by enacting the 100-day deadline to challenge an arbitral award under section 1288.2.[3]

### B.

That is not the end of the analysis, however. Even if a statute of limitations is nonjurisdictional, the Legislature still may preclude the court from applying equitable doctrines like tolling and estoppel. (See *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 720 (*Saint Francis*); see also, e.g., *Boechler, supra*, 596 U.S. at pp. ___–___ [142 S.Ct. at pp. 1500–1501].)

In *Saint Francis*, we described the framework for determining whether a nonjurisdictional statute of limitations is subject to equitable tolling. We explained that the tolling doctrine derives from the courts' inherent equitable powers, not from a delegation of authority by the Legislature in a particular statute. (*Saint Francis, supra*, 9 Cal.5th at p. 720.) This equitable power forms " 'part of the established backdrop of American law,' " and we assume that the Legislature understands this background principle when drafting statutory deadlines. (*Id.* at p. 721, quoting *Lozano v. Montoya Alvarez* (2014) 572 U.S. 1, 11.) Accordingly, we presume that a statutory limitations period is subject to equitable tolling. (*Saint Francis*, at p. 720, citing *Irwin v. Department of Veterans Affairs* (1990) 498 U.S. 89, 95–96.) Much like the presumption that a filing deadline is nonjurisdictional, the presumption that a deadline permits tolling and other forms of equitable relief is rebuttable:

---

[3]    We disapprove *Darby v. Sisyphian, LLC, supra*, 87 Cal.App.5th 1100 to the extent that it characterized section 1288.2's 100-day limitations period as "jurisdictional" in the fundamental sense.

An examination of the "explicit statutory language" or the "manifest policy underlying a statute" may demonstrate that the Legislature intended to reverse the usual rule. (*Saint Francis*, at p. 720.) We have applied a similar presumption in assessing whether the Legislature intended to preclude courts from applying equitable estoppel. In that context, we held that " 'courts should not presume the Legislature intended "to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." ' " (*Atwater Elementary School Dist. v. California Dept. of General Services* (2007) 41 Cal.4th 227, 233, quoting *Juran v. Epstein* (1994) 23 Cal.App.4th 882, 896.)

Here, just as we have discerned no clear legislative intent to limit the courts' fundamental jurisdiction to consider a late-filed vacatur request, neither do we discern any clear legislative intent to preclude courts from providing equitable relief from the statutory deadlines under appropriate circumstances. To begin, section 1288.2 does not expressly prohibit courts from applying traditional equitable principles to the statutory deadline. If the Legislature had intended to preclude equitable tolling or equitable estoppel, it could have done so expressly. (See, e.g., Code Civ. Proc., § 366.2, subd. (b) [providing a one-year statute of limitations for a surviving action against a deceased person and stating that the period "shall not be tolled or extended for any reason" except as specified in the statute]; *Atwater Elementary School Dist. v. California Dept. of General Services, supra,* 41 Cal.4th at p. 233 [" 'The Legislature could have easily stated it intended to abrogate long-established equitable principles [such as equitable estoppel]. It did not do so.' "].) Instead, section 1288.2 reads like other run-of-the-mill

19

statutes of limitations that we have held are subject to equitable tolling. (Compare Code Civ. Proc., § 1288.2 [providing that a response "shall be served and filed not later than 100 days after the date of service of a signed copy of the award"] with, e.g., *Saint Francis*, *supra*, 9 Cal.5th at p. 720 [holding that equitable tolling applies to Gov. Code, § 11523, which provides that a petition for writ of mandate "shall be filed within 30 days after the last day on which reconsideration can be ordered"].)

Even absent an express prohibition, however, we have held that equitable exceptions may be inconsistent with the statutory text or the legislative policy reflected in the statutory scheme. (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 371 (*Lantzy*); *McDonald*, *supra*, 45 Cal.4th at p. 105.) In *Lantzy*, for example, we held that Code of Civil Procedure section 337.15's 10-year limitations period for actions based on latent construction defects could not be equitably tolled while the potential defendant attempted to repair the defects. (*Lantzy*, at p. 383.) Although the statute of limitations did not expressly forbid equitable tolling, we determined that the "stentorian terms" of the statutory language and the legislative purpose behind the broader statutory scheme reflected a clear intent to preclude a general tolling-for-repairs rule. (*Id.* at p. 373; see *id.* at pp. 374–380.) Specifically, we noted that "a suit to recover for a construction defect generally is subject to limitations periods of three or four years" depending on the theory of recovery, and that "these periods begin to run only when the defect would be discoverable by reasonable inspection." (*Id.* at p. 369.) The 10-year limitations period supplemented these shorter periods by prescribing an absolute outer limit before which an action to recover for a latent construction defect must be brought, " 'regardless of the date of discovery of the defect.' " (*Ibid.*) We

reasoned that the "extraordinary length" of the 10-year limitations period at issue "weigh[ed] strongly against the need for such a tolling rule as a matter of fair procedure." (*Id.* at p. 367.)

Turning to the legislative purpose underlying the two-tiered limitations architecture, we observed that "the statute is the result of general legislative concern about the economic effects of indefinite 'long tail' defect liability on the construction industry." (*Lantzy, supra,* 31 Cal.4th at p. 374.) The 10-year limitations period arose from the Legislature's concern that participants in the construction industry faced potential exposure to liability for defects in their past projects many years after those projects were completed. (*Id.* at pp. 374–375.) That exposure "was producing a risk for which insurance was available only at prohibitive cost, if at all, thus threatening the industry's economic health." (*Id.* at p. 376.) Application of a general tolling-for-repairs rule would, we concluded, "fundamentally compromise" the legislative purpose to curtail the effects of that long-tail exposure, "a consideration that outweighed any corresponding harm to the plaintiffs arising from foreclosure of their claims." (*McDonald, supra,* 45 Cal.4th at p. 106, citing *Lantzy,* at pp. 378–379.)

This case differs markedly from *Lantzy,* where the complementary limitations periods were part of a deliberately constructed statutory design. Here, by contrast, we discern no analogous fundamental statutory policy inconsistent with application of traditional equitable doctrines. Although, as noted, the Legislature did enact a strict 100-day limit for challenging an arbitration award to ensure prompt finality, we have previously held that the Legislature's choice to enact a "relatively brief" limitations period does not, by itself, mean the

Legislature intended to foreclose equitable tolling or other forms of equitable relief in "unusual situations." (*Saint Francis*, *supra*, 9 Cal.5th at pp. 720, 721.) Because equitable tolling is not " 'a cure-all for an entirely common state of affairs' " (*id.* at p. 724, quoting *Wallace v. Kato* (2007) 549 U.S. 384, 396) but instead applies only "in carefully considered situations to prevent the unjust technical forfeiture of causes of action" (*Lantzy*, *supra*, 31 Cal.4th at p. 370), tolling of the 100-day period for seeking vacatur will be the exception, not the norm. Lender has not shown that applying the doctrine to extend the 100-day deadline in those limited, exceptional circumstances would "fundamentally compromise" (*McDonald*, *supra*, 45 Cal.4th at p. 106) the legislative purpose to promote the efficient final resolution of arbitral disputes.

Lender argues that two features of the statutory scheme reflect a clear legislative purpose to prohibit a court from applying any equitable exceptions. First, Lender contrasts section 1290.6, which includes a mechanism for the parties or the court to extend the deadline for filing a response, with section 1288.2, which does not. Lender argues that the omission of a comparable extension mechanism in section 1288.2 signals the Legislature's intent to foreclose equitable tolling.

We are not persuaded. Section 1290.6 is a general provision that applies to any response filed in any arbitration-related judicial proceeding, including a response filed in a proceeding unrelated to the enforcement of an arbitration award. The extension mechanism in that provision permits the parties to agree to extend the response deadline for any reason at all and permits the court to extend the deadline for good cause. That exception gives the parties and the court wide latitude to set a briefing schedule in any arbitration-related

proceeding — an exception that would permit modifying the response deadline without necessarily meeting the requirements for equitable tolling or estoppel. Section 1288.2, by contrast, is specific to responses to petitions to confirm an arbitration award and applies only when the response seeks vacatur. The legislative choice to enact a broad exception to section 1290.6's general response deadline conveys no clear intention to insulate section 1288.2's more specific deadline from the application of traditional equitable principles. (Cf. *Atwater Elementary School Dist. v. California Dept. of General Services*, *supra*, 41 Cal.4th at p. 234 ["Thus, the Legislature's decision to include or omit such an express legal exception does not signal an intent to bar the application of equitable estoppel. It simply reflects a legislative disinclination to write a sweeping exception into the statutory scheme as a matter of law."].)[4]

Second, Lender again points to the neighboring provision of section 1286.4, which says that "[t]he court may not vacate" an arbitral award unless a vacatur request is "duly served and filed." (*Id.*, subd. (a).) Lender argues that "[i]f the Legislature intended courts to have the power to equitably toll the vacatur deadlines, it would make no sense for the Legislature to have expressly directed that courts 'may not vacate' an award absent compliance with specific service and filing requirements."

---

[4]    Even when considering statutes that do, themselves, include enumerated grounds for tolling, we have held "that the legislative codification of particular tolling bases" does not "establish[] a legislative intent to preclude tolling on any other basis." (*McDonald*, *supra*, 45 Cal.4th at p. 107.) "To the contrary, we have implicitly assumed that the Legislature's authority to declare tolling bases . . . and the courts' ability to do likewise may coexist in the absence of an explicit legislative directive that they may not." (*Ibid.*, citation omitted.)

Once again, we are unpersuaded. In full, section 1286.4 states: "The court may not vacate an award unless: [¶] (a) A petition or response requesting that the award be vacated has been duly served and filed; or [¶] (b) A petition or response requesting that the award be corrected has been duly served and filed and: [¶] (1) All petitioners and respondents are before the court; or [¶] (2) All petitioners and respondents have been given reasonable notice that the court will be requested at the hearing to vacate the award or that the court on its own motion has determined to vacate the award and all petitioners and respondents have been given an opportunity to show why the award should not be vacated." Read as a whole, the evident purpose of this provision is to ensure that all parties to the arbitration have adequate notice that the court may vacate an award and are provided an opportunity to respond. The provision does not, as Lender argues, also reveal a clear legislative purpose to preclude courts from applying equitable exceptions to section 1288.2. On the contrary, as we have already explained, the language in section 1286.4 can be read in a manner that accounts for the availability of equitable relief in appropriate circumstances.

In sum, we see nothing in the "explicit statutory language" nor in the "manifest policy underlying [the] statute" demonstrating that the Legislature intended to reverse the usual rule and preclude the courts from applying traditional principles of equity to section 1288.2's statutory deadline. (*Saint Francis, supra*, 9 Cal.5th at p. 720.) We therefore hold that section 1288.2 is subject to both equitable tolling and claims of equitable estoppel.

It is a separate question whether Key has established entitlement to equitable relief in this particular case. The Court

of Appeal answered that question in the negative, but its answer appears to have been predicated on the court's belief that section 1288.2's 100-day deadline is jurisdictional in the fundamental sense. Specifically, the Court of Appeal observed that Key's arguments for equitable relief "depend upon the assumption that the parties could alter the 100-day deadline by agreement" and that this assumption was unreasonable, in part because the 100-day deadline is "jurisdictional." (*Law Finance Group, LLC v. Key*, *supra*, 67 Cal.App.5th at pp. 321, 322.) The court's conclusion that Key is not entitled to equitable relief warrants reexamination in light of our conclusion that section 1288.2's deadline may be tolled in exceptional circumstances and that a party may be estopped from raising the deadline as a defense. We express no view on whether Key is entitled to equitable relief, which is an issue for the Court of Appeal to address in the first instance.

## IV.

Key raises a final argument. She contends that regardless of the timeliness of her filing, the trial court was obligated to reach the merits and vacate the arbitration award because her substantive claim goes to the legality of her Agreement with Lender and arbitration awards enforcing entirely illegal contracts cannot be confirmed. She argues, in other words, that a claim of contract illegality can never be forfeited by failure to raise it in a timely response seeking to have an arbitral award vacated. If Key were correct on this point, it would be unnecessary to conduct further proceedings to address her entitlement to equitable relief from the statutory deadline. But we are unconvinced.

Key's argument that a claim of contract illegality can never be forfeited rests on our treatment of a claim of illegality as a ground for challenging an arbitral award. "Generally, courts cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916 (*Richey*).) But in *Loving & Evans v. Blick* (1949) 33 Cal.2d 603 (*Loving & Evans*), we held that "the rules which give finality to the arbitrator's determination of ordinary questions of fact or of law are inapplicable where the issue of illegality of the entire transaction is raised in a proceeding for the enforcement of the arbitrator's award." (*Id.* at p. 609.) That is so because the arbitration statute permits a court to vacate an arbitral award if " 'the arbitrators exceeded their powers,' " and "the power of the arbitrator to determine the rights of the parties is dependent upon the existence of a valid contract under which such rights might arise." (*Id.* at pp. 609–610; see also Code Civ. Proc., § 1286.2, subd. (a).)

Although *Loving & Evans* predates the 1961 Act, we have since reaffirmed that "judicial review may be warranted when a party claims that an arbitrator has enforced an entire contract or transaction that is illegal." (*Richey, supra,* 60 Cal.4th at p. 917, citing *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 32 (*Moncharsh*).) We have also acknowledged that "there may be some limited and exceptional circumstances justifying judicial review of an arbitrator's decision when a party claims illegality affects only a portion of the underlying contract" — for example, where confirming the award "would be inconsistent with the protection of a party's statutory rights." (*Moncharsh,* at p. 32 [citing *Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220, 225–227, for the proposition that claims based on

statutes are generally arbitrable unless the legislature specifically " 'intended to preclude a waiver of judicial remedies for the statutory rights at issue' "].)

Here, Key pitches her illegality challenge as one that implicates the entire Agreement — including, presumably, the arbitration clause itself. Curiously, though, Key has never argued that the arbitration clause in the Agreement with Lender was not enforceable or that the illegality issue is nonarbitrable. Even now, Key does not ask us to disregard the arbitral award entirely and review the illegality claim de novo, with the benefit of briefing and argument on the merits of that issue, even though both parties have raised questions about the merits of the arbitrators' decision. While Key challenges the arbitrators' choice of remedy for Lender's alleged violation of the California Financing Law, Lender argues the arbitrators were wrong to find a violation in the first place; Lender contends that the arbitrators erred in classifying the loan as a "consumer loan" and that, in any event, the California Financing Law's prohibitions on compound interest and certain fees do not apply to "any loan of a bona fide principal amount of five thousand dollars . . . or more." (Fin. Code, § 22250, subd. (b).) The arbitrators' conclusions on those issues inure to Key's benefit, and she asks us to accept them as conclusive. She takes issue only with the arbitration panel's choice of remedy — its decision to reform rather than void the contract, a decision that, in Key's view, contravenes her statutory rights.

In any event, the important point for our purposes is that Key does not seek merely to establish a substantive basis for judicial review; rather, she invokes a right to such review notwithstanding the applicable statutory deadlines. But our cases establish no such right. To the contrary, whether we

construe Key's argument as challenging the legality of the entire Agreement or only a portion of it, our decision in *Moncharsh* forecloses her contention that a claim of illegality can never be forfeited by a failure to raise the claim in a timely manner. In *Moncharsh*, the plaintiff sought to vacate an arbitral award, claiming that the arbitrators had enforced an illegal noncompete provision of his employment contract. (*Moncharsh*, *supra*, 3 Cal.4th at pp. 6–8.) We held that the claim of illegality was not the kind that would require a court to intervene on public policy grounds. (*Id.* at p. 33.) Critically, however, we did so only after considering whether the claim had been forfeited through failure to raise it in accordance with prescribed procedure. (See *id.* at pp. 29–31.) We explained that both challenges asserting that "grounds exist to revoke the entire contract" and challenges going "to only a portion of the contract" can be forfeited if they are not timely raised. (*Id.* at pp. 29, 30; cf. *Richey*, *supra*, 60 Cal.4th at p. 920, fn. 3 [by not raising the issue in the superior court, the plaintiff forfeited on appeal a claim that an arbitral award must be vacated because the underlying contract violated his statutory rights].)

Although *Moncharsh* did not involve section 1288.2's 100-day deadline for a response seeking vacatur of an arbitral award, the case makes clear that claims of contract illegality are not categorically immune from the traditional rules of forfeiture. It follows that the court in this case was not obligated to entertain an untimely request to vacate the arbitral award merely because Key asserted that the award enforces a contract made unlawful by statute.[5]

---

[5]     We disapprove *South Bay Radiology Medical Associates v. Asher* (1990) 220 Cal.App.3d 1074, 1079, 1080 insofar as it

A contrary conclusion would undermine the statutory scheme governing challenges to arbitration awards. The Act sets out both the grounds and relevant procedures for seeking vacatur. As we explained in *Loving & Evans*, judicial review of an arbitral award based on a claim of contract illegality is authorized by the statutory provision permitting a court to vacate an arbitral award if " 'the arbitrators exceeded their powers,' " for arbitrators have no power to determine the rights of the parties if the underlying contract is unlawful. (*Loving & Evans, supra*, 33 Cal.2d at pp. 609–610; see also *Sheppard, Mullin, Richter & Hampton, LLP v. J-M Manufacturing Co., Inc.* (2018) 6 Cal.5th 59, 72, 73 [noting that the excess-of-authority exception to the rule of arbitral finality is "specified by statute" and that *Loving & Evans* "held that the excess-of-authority exception applies, and an arbitral award must be vacated, when a court determines that the arbitration has been undertaken to enforce a contract that is 'illegal and against the public policy of the state' "].) But while the Act establishes a basis for seeking vacatur on the ground of contract illegality, it also sets a deadline for doing so. In making her argument for vacatur of the arbitral award under the Act, Key may not disregard the Act's instructions for when those arguments must be asserted.[6]

This conclusion does not undermine the overarching lesson of *Loving & Evans* that "an unlawful transaction cannot

_____

suggests that an "attack on the arbitrator's decision [that] is based on alleged illegality" is a defense that "may be raised at any time."

[6] In addressing the timeliness of Key's claim that certain provisions of her Agreement with Lender are inconsistent with statutory requirements, we express no views on a court's discretion to reach the merits of a forfeited claim of contract illegality where enforcement of the contract raises matters of significant public interest and threatens substantial injustice.

be given legal vitality by the arbitration process . . . ." (*Loving & Evans, supra,* 33 Cal.2d at p. 611.)  Just as an appellant may forfeit the opportunity to vindicate her statutory rights by failing to preserve an issue in the trial court or by failing to file a timely notice of appeal, so too, in a postarbitration judicial proceeding to enforce an arbitral award, a challenger may forfeit the opportunity to raise a claim of contract illegality by failing to timely request that the arbitration award be corrected or vacated.

## V.

We hold that section 1288.2's deadline for seeking vacatur of an arbitral award is a nonjurisdictional statute of limitations that is subject to equitable tolling and equitable estoppel.  The Court of Appeal must determine in the first instance whether equitable considerations should excuse Key's failure to comply with the statutory deadline.  We reverse the judgment of the Court of Appeal and remand for further proceedings consistent with this opinion.

**KRUGER, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  Law Finance Group, LLC v. Key

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 67 Cal.App.5th 307
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S270798
**Date Filed:** June 26, 2023

_____

**Court:**  Superior
**County:**  Los Angeles
**Judge:**  Rafael A. Ongkeko

_____

**Counsel:**

Eisner, Weinberg Gonser Frost, Christopher L. Frost, Taylor S. Simeone; Greines, Martin, Stein & Richland, Cynthia E. Tobisman, Alana H. Rotter and Jeffrey E. Raskin for Plaintiff and Appellant.

Grignon Law Firm, Margaret M. Grignon and Anne M. Grignon for Defendant and Respondent.

Zareh A. Jaltorossian; Mathew H. Fisher; R. Rex Parris; Michael J. Jaurigue, Barbara DuVan-Clarke; Joseph A. Kaufman; and Kevin Chiang for KP Law, Da Vega Fisher Mechtenberg, LLP, Parris Law Firm, JLG Lawyers, Joseph A. Kaufman & Associates, Inc., and Equity Legal Group as Amici Curiae on behalf of Defendant and Respondent.

The Office of Michael Tenenbaum and Michael Tenenbaum for Michael Tenenbaum and Micha Star Liberty as Amici Curiae.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Alana H. Rotter
Greines, Martin, Stein & Richland LLP
6420 Wilshire Boulevard, 11th Floor
Los Angeles, CA 90048
(310) 859-7811

Margaret M. Grignon
Grignon Law Firm LLP
3780 Kilroy Airport Way, Suite 200
Long Beach, CA 90806
(562) 285-3171